# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Trinidad Jesus Garcia, | Civ. No. 16-4015 (DWF/BRT) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| MEND Medical Services and Gwen Blossom, | |
| Defendants. | |

Trinidad Jesus Garcia, #18826-041, PO Box 1000, Leavenworth KS 66048, *pro se* Plaintiff.

Anthony J. Novak, Esq., Larson King, LLP, counsel for Defendants.

BECKY R. THORSON, United States Magistrate Judge.

*Pro se* Plaintiff Trinidad Jesus Garcia alleges that he received inadequate medical care while incarcerated at the Sherburne County Jail. (*See* Doc. No. 43, Am. Compl.) The remaining Defendants in this matter,[1] MEND Medical Services and Gwen Blossom (Defendants or the MEND Defendants), move for summary judgment. (Doc. No. 94.) Also before the Court is Plaintiff's motion to compel. (Doc. No. 104.) For the reasons stated below, this Court recommends that Defendants' motion for summary judgment be granted, and Plaintiff's motion to compel be denied.

---

[1] Previously, the Court dismissed Plaintiff's claim against Sherburne County Jail Administrator Brian Frank that a negligently-maintained shower led to physical injuries. (Doc. No. 86.)

## I.    Background

Plaintiff is currently serving a 137-month term of imprisonment for possession with intent to distribute methamphetamine. *See United States v. Garcia*, Case No. 15-cr-260 (D. Minn.) (Doc. No. 853.) MEND is a private corporation that entered into a contract with Sherburne County, Minnesota to provide health care services to inmates at the Sherburne County Jail. Defendant Blossom is a nurse practitioner employed by MEND, and was one of the providers who treated Plaintiff during his time at Sherburne County Jail. At all times relevant to his claims against the MEND Defendants, Plaintiff was an inmate at Sherburne County Jail.[2]

Plaintiff filed this action on November 29, 2016, and he amended his complaint on August 21, 2017. (Doc. Nos. 43, 75.) Plaintiff's claims are related to a variety of medical issues, including ankle and wrist pain, dental problems, eye issues, and treatment for a fall in the shower. Defendants saw Plaintiff at several appointments from September 28, 2015 through January 19, 2017. (*See* Doc. No. 97, Affidavit of Anthony J. Novak ("Novak Aff.") ¶ 2; Doc. No. 98, Ex. 1.) What follows is a representative sample of Plaintiff's treatment by the MEND Defendants while he was incarcerated at Sherburne County Jail.

On December 16, 2015, Plaintiff was seen by Defendant Blossom for evaluation of a sick call for injury to his left ankle after slipping when coming down from the top bunk. Plaintiff rated his pain as 7/10 and described throbbing. Plaintiff was referred for x-rays of the left foot and ankle. Defendant Blossom noted that x-rays reported no evidence

---

[2]      Plaintiff is currently detained at a federal penitentiary in Leavenworth, Kansas.

of fracture or dislocation; only mild soft tissue swelling. Plaintiff was advised to ice the area for three days, twenty minutes at a time, and to elevate his left leg when at rest. (Ex. 1 at 1, 3.)

Plaintiff was seen on April 12 and 14, 2016, for left wrist pain. Plaintiff noted that the swelling in his wrists was not new, as they became swollen after working on a computer. Defendant Blossom prescribed Tylenol and told Plaintiff to use ice as needed, refrain from computer use, and elevate/move his writs regularly but carefully. (*Id.* at 5–8.)

During a clinic visit on May 18, 2016, Plaintiff reported seeing black spots or lines in his field of vision for the previous four days. He was seen by Defendant Blossom for further assessment. (*Id.* at 9–20.) During an assessment by Defendant Blossom, Plaintiff reported five days of black spots and lines in his right eye. Defendant Blossom requested an eye exam for the vision changes. (*Id.* at 21–22.)

On June 7, 2016, Plaintiff was seen by NovaCare Rehabilitation for a physical therapy visit. Plaintiff was given a home exercise program to address the pain/swelling in his wrists. (*Id.* at 23–34.)

Pursuant to a recommendation from a dentist, Plaintiff had put in a request to have his remaining front teeth pulled so he could get dentures. (*Id.* at 58–61.) On July 14, 2016, Defendant Blossom noted that the U.S. Marshal did not approve dentures for patients. Plaintiff was on a soft diet, which was the recommended diet for individuals with dental concerns. (*Id.* at 37.)

On August 23, 2016, Plaintiff reported swelling in his left knee, left ankle, and both wrists. No swelling was seen in his ankles, knees, or wrists on exam. Defendant Blossom observed that Plaintiff could sit, stand, and walk without difficulty. Plaintiff could also bend/move his knees without difficulty. Lab testing was requested and performed on August 26, 2016. Defendant Blossom reported on August 31, 2016, that the lab results were within normal limits, except the test looking for inflammation returned elevated. Defendant Blossom advised that Plaintiff would be scheduled for a Rheumatology consultation. (*Id.* at 38–45.)

Plaintiff was seen on November 10, 2016, by another outside specialist, Allina Rheumatology. Plaintiff complained of joint pain/swelling in his left wrist, left knee, and left ankle. The specialist diagnosed Plaintiff with inflammatory arthritis, removed fluid from the left knee, sent fluid for testing/studies, took blood work, prescribed Naproxen, and recommended a follow-up in four weeks. (*Id.* at 47–52.)

On November 25, 2016, Plaintiff injured his head, neck, right shoulder, right arm, and left lower back during a fall outside a shower. No bruising or swelling was noted when the Plaintiff was seen in the clinic. There was slight redness on his neck and a one centimeter long cut on his right ring finger, which was cleaned and a Band-Aid was applied. The on-call medical provider initiated a thirty minute special watch overnight to look for signs of concussion, and advised Plaintiff to apply ice and to follow up with the clinic as needed. (*Id.* at 53–55.)

Finally, during a clinic visit on January 2, 2017, Plaintiff reported redness in his right eye since January 1, 2017. Plaintiff reported that both eyes were itchy and that his

eyes were matted in the morning. Plaintiff was prescribed Cromolyn Ophthalmic drops

for eye infection, and planned to recheck his eyes in seven days. (*Id.* at 56–57.)

## II.    Analysis

### A.    Standard of Review

Summary judgment is appropriate if, "after viewing the evidence and drawing all

reasonable inferences in the light most favorable to the nonmovant, no genuine issues of

material fact exist and the movant is entitled to judgment as a matter of law." *Johnson v.*

*Carroll*, 658 F.3d 819, 825 (8th Cir. 2011) (quotation omitted). In ruling on a motion for

summary judgment, "[t]he evidence of the non-movant is to be believed, and all

justifiable inferences are to be drawn in his favor," because "[c]redibility determinations,

the weighing of the evidence, and the drawing of legitimate inferences from the facts are

jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

(1986). A disputed fact is material when its resolution "might affect the outcome of the

suit under the governing law," and a factual dispute is genuine "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The party moving for summary judgment bears the initial burden of informing the

court of the basis for its motion and identifying "those portions of the record which it

believes demonstrate the absence of a genuine issue of material fact." *Jackson v. United*

*Parcel Serv., Inc.*, 643 F.3d 1081, 1085 (8th Cir. 2001) (quotations omitted). If it does so,

the non-moving party may not rest on mere allegations or denials, but must point to

evidence of "specific facts showing that there is a genuine issue for trial." *Anderson*, 477

U.S. at 256; *see also* Fed. R. Civ. P. 56(c)(1). Conclusory assertions, standing alone, are

not enough to create a genuine issue of material fact. *See Bennett v. Nucor Corp.*, 656 F.3d 802, 820 (8th Cir. 2011). Where the evidence "could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial" and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation omitted).

When deciding a summary judgment motion, courts liberally construe pro se pleadings and hold them to a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, a pro se plaintiff's claims cannot survive a summary judgment motion unless he has set forth specific facts demonstrating that there is a genuine issue for trial. *See Quam v. Minnehaha Cnty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987).

### B.    Eighth Amendment

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Whether an official was deliberately indifferent requires both an objective and a subjective analysis." *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014). The objective prong requires the Plaintiff to "establish he suffered from an objectively serious medical need. Under the subjective prong, Plaintiff must show that an official actually knew of but deliberately disregarded his serious medical need." *Id.* For the subjective prong, "the prisoner must show more

6

than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation." *Popoalii v. Correctional Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008). "The subjective inquiry must show a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." *Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006). An inmate "must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010).

The medical records in this case, generally described above, show that the MEND Defendants were not deliberately indifferent to Plaintiff's medical needs. Instead, they treated him when necessary for his various health concerns. For example, when lab testing revealed elevated inflammation, Plaintiff was referred to a rheumatologist who diagnosed Plaintiff with inflammatory arthritis, removed fluid from the left knee, sent fluid for testing/studies, took blood work, prescribed Naproxen, and recommended a follow-up in four weeks. (Ex. 1 at 47–52.) Further, Plaintiff received prompt treatment after falling from the top bunk and falling in the shower, and he also received regular dental care and treatment for his eyes, including eye exams and eye drops. Plaintiff concedes that the MEND Defendants saw him "frequently." (Doc. No. 106, Pl.'s Mem. 8.)

Plaintiff argues that he can satisfy the subjective component of his deliberate indifference claim because the "pain issue is deliberate indifference." (Pl.'s Mem. 8.) Plaintiff complains, for example, that he endured months of pain between June and

7

November 2016 before being sent to an outside rheumatologist. (*Id.* at 3, 8.) This does not mean that Defendants were deliberately indifferent. To the contrary, Plaintiff's medical records reflect that Plaintiff was treated in the intervening period. In August 2016, Plaintiff underwent lab testing for inflammation, which led to Plaintiff's further treatment in November 2016. (Ex. 1 at 41–43.)

Regarding issues with his teeth, Plaintiff argues that he was denied his "right" to receive dentures, which were recommended by an "outside dentist." (*Id.* at 4.) Prison officials are "constitutionally obligated to see that the inmates in their custody who need dental care receive it." *Williams v. York*, 891 F.3d 701, 707 (8th Cir. 2018). Even so, this duty does not include providing dental implants "when not medically necessary, as implants are considered 'high-end dental treatment by organized dentistry standards.'" *Ditter v. Nebraska Dep't of Corr. Servs.*, No. 4:16CV3159, 2017 WL 401821, at *3 n.4 (D. Neb. Jan. 30, 2017) (quoting *Reaves v. Voglegesang*, No. 5:10-CV-044, 2010 WL 8445306, at *3 (N.D. Tex. Nov. 23, 2010)). While Plaintiff asserts that dentures were "recommended" by an outside dentist, Plaintiff offers no evidence to suggest that they were medically necessary. Also, Plaintiff was placed on a soft food diet, and Plaintiff does not assert that he lost weight or was unable to eat. Under similar circumstances, the Eighth Circuit found that a nurse and civil commitment unit director were entitled to qualified immunity on a civilly-committed sex offender's claim of deliberate indifference based on their refusal to provide him with dentures. *See Mead v. Palmer*, 794 F.3d 932, 937 (8th Cir. 2015). In *Mead*, the inmate was never prescribed dentures as a medical necessity, and despite his claims of inability to chew and discomfort, he was still able to

eat and consume adequate calories and nutrition. *Id.* In the absence of similar evidence, Defendants are entitled to summary judgment on this claim.

Ultimately, Plaintiff's complaint reflects his dissatisfaction with the quality of care that he received for his various medical issues. However, as noted above, "mere disagreement with treatment decisions does not give rise to the level of a constitutional violation." *Popoalii*, 512 F.3d at 499. Plaintiff's medical records demonstrate that the conduct of the MEND Defendants falls far short of the "substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment," *Nelson*, 603 F.3d at 449, that being, "a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." *Gordon*, 454 F.3d at 862. Therefore, the MEND Defendants should be granted summary judgment.

### C.      Motion to Compel

Plaintiff moves to compel the Sherburne County Jail Medical Unit to produce his medical records. (Doc. No. 104.) Sherburne County is no longer a party to this case. (*See* Doc. Nos. 15, 86.) To the extent this motion is directed at the remaining Defendants, MEND Medical Services and Gwen Blossom, those Defendants do not own or control those records, must obtain them (as they have) through authorization or an Order, and are not authorized to distribute them. (Doc. No. 108.) Moreover, the MEND Defendants filed Plaintiff's medical records as an exhibit in support of their motion for summary judgment. (Doc. No. 98.) Plaintiff was served with the exhibit and was then able to cite to the record in his opposition to Defendant's motion. (*See* Doc. No. 106 at 2–9.) Therefore,

aside from being directed towards the incorrect entity, it appears that Plaintiff's motion

may also be moot. For these reasons, Plaintiff's Motion to Compel should be denied.

## RECOMMENDATION

Based on the foregoing, and also on the files, records, and proceedings herein, **IT**

**IS HEREBY RECOMMENDED** that:

1.      Defendants' Motion for Summary Judgment (Doc. No. 94) be **GRANTED**;

2.      Plaintiff's Motion to Compel (Doc. No. 104) be **DENIED**; and

3.      Judgment be entered accordingly.


Date: September 28, 2018.                    *s/ Becky R. Thorson*_____
                                             BECKY R. THORSON
                                             United States Magistrate Judge




## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the
District Court and is therefore not appealable directly to the Eighth Circuit Court of
Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written
objections to this Report within **fourteen days**. A party may respond to those objections
within **fourteen days** after service thereof. LR 72.2(b)(2). All objections and responses
must comply with the word or line limits set forth in LR 72.2(c).